No. 15-2080

# United States Court of Appeals
# For the Federal Circuit

————————

AFFINITY LABS OF TEXAS, LLC,

*Plaintiff-Appellant,*

v.

AMAZON.COM, INC. AND AMAZON DIGITAL SERVICES, INC,

*Defendants-Appellees.*

————————

Appeal from the United States District Court for the Western District of Texas
Case No. 6:15-cv-0029-WSS-JCM
Hon. Walter S. Smith, Jr.

---

## BRIEF OF DEFENDANTS-APPELLEES
## AMAZON.COM, INC. AND
## AMAZON DIGITAL SERVICES, INC.

---

Gregory Garre
Gabriel Bell
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004
202.637.2200

Jeffrey H. Dean
AMAZON.COM, INC.
440 Terry Ave. North
Seattle, WA 98109
206.740.0521

February 22, 2016

J. David Hadden
Saina S. Shamilov
Todd R. Gregorian
Ravi Ranganath
Adam Lewin
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041
650.988.8500

*Counsel for Defendants-Appellees
Amazon.com, Inc. and Amazon
Digital Services, Inc.*

# CERTIFICATE OF INTEREST

Counsel for the Defendants-Appellees, Amazon.com, Inc. and Amazon Digital Services, Inc. (collectively, "Amazon"), certify the following:

1.   The full name of every party represented by us is:  Amazon.com, Inc. and Amazon Digital Services, Inc.

2.   The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by us is:  As indicated in item (1).

3.   All parent corporations and any publicly held companies that own 10 percent or more of the stock of the parties represented by us are:

Amazon, Inc.:  None.

Amazon Digital Services, Inc. is wholly owned by Amazon.com, Inc.

4.   The name of the firm and the partners or associates that appeared for the parties represented by us in the trial court, or are expected to appear in this Court, are:

Fenwick & West LLP:  J. David Hadden, Saina S. Shamilov; Todd R. Gregorian;  Ravi R. Ranganath;  Amy Hayden;  Adam M. Lewin;

Formerly of Fenwick & West LLP:  Ryan A. Marton, Tyz Marton & Schumann LLP; Shannon Kumagai, Arnold & Porter;

Latham & Watkins LLP:  Gregory Garre, Gabriel Bell;

Haley & Olson, P.C.:  Leslie A. Palmer, Jr.;

Amazon.com, Inc.:  Jeffrey H. Dean.

Dated:  February 22, 2016                    Respectfully submitted,


                                        */s/ J. David Hadden*
                                          J. David Hadden

                                          *Counsel for Defendants-Appellees*
                                          *Amazon.com, Inc. and*
                                          *Amazon Digital Services, Inc.*

# TABLE OF CONTENTS

*Page(s):*

CERTIFICATE OF INTEREST-------------------------------------------------------------- i

STATEMENT OF RELATED CASES ----------------------------------------------- 1

JURISDICTIONAL STATEMENT -------------------------------------------------- 1

COUNTERSTATEMENT OF THE ISSUES ------------------------------------- 1

INTRODUCTION------------------------------------------------------------------------- 2

COUNTERSTATEMENT OF THE CASE----------------------------------------- 5

    A.   The '085 Patent------------------------------------------------------------ 5

    B.   The Proceedings Below ---------------------------------------------- 10

SUMMARY OF ARGUMENT ---------------------------------------------------- 12

ARGUMENT ------------------------------------------------------------------------------ 14

I.    STANDARD OF REVIEW ---------------------------------------------------- 14

II.   THE DISTRICT COURT PROPERLY HELD THAT THE
     '085 PATENT CLAIMS INELIGIBLE SUBJECT MATTER
     UNDER 35 U.S.C. § 101 ------------------------------------------------------ 15

    A.   The '085 Patent Is Drawn to the Abstract Idea of Delivering
        Selectable Media Content and Subsequently Playing the Selected
        Content on a Portable Device------------------------------------------ 18

    B.   The Claim Elements Add Nothing Inventive---------------------- 23

        1.   The Claim Elements on Which Affinity Relies Do Not
             Transform the Abstract Idea into a Patent-Eligible  Invention 24

        2.   The Other Claim Elements of the Independent Claims Are
             Generic or Conventional ------------------------------------- 29

        3.   The Dependent Claims Add Nothing Inventive ----------------- 29

        4.   The '085 Patent Fails the Machine-or-Transformation Test--- 31

5.     The Claims Are Unduly Preemptive -----------------------------32

III.  THE DISTRICT COURT DID NOT ERR IN DECIDING PATENT
      INELIGIBILITY ON THE PLEADINGS---------------------------------------34

      A.     The District Court Did Not Engage in Improper Fact-Finding
             to Decide Patent Ineligibility --------------------------------------35

      B.     The Clear and Convincing Evidentiary Standard Has No
             Bearing on Whether the '085 Patent Claims Eligible Subject
             Matter ----------------------------------------------------------------37

      C.     The District Court Did Not Abuse Its Discretion in Striking
             Affinity's Declaration----------------------------------------------38

CONCLUSION --------------------------------------------------------------------------41

# TABLE OF AUTHORITIES

*Cases:*                                                                                   *Page(s):*

*Accenture Global Servs., GmbH v. Guidewire Software, Inc*.,
   728 F.3d 1336 (Fed. Cir. 2013), *cert. denied*, 134 S. Ct. 2871
   (2014) ------------------------------------------------------------------ 23

*Alice Corp Pty. Ltd. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014) --------------------------------------------*passim*

*Ariosa Diagnostics, Inc. v. Sequenom, Inc*.,
   788 F.3d 1371 (Fed. Cir. 2015) -------------------------------------- 33

*Aro Mfg. Co. v. Convertible Top Replacement Co*.,
   365 U.S. 336 (1961) ----------------------------------------------------- 20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ----------------------------------------------------- 15

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*,
   133 S. Ct. 2107 (2013) ------------------------------------------------- 39

*B.V.D. Licensing Corp. v. Body Action Design, Inc*.,
   846 F.2d 727 (Fed. Cir. 1988)-------------------------------------------- 37

*Bilski v. Kappos*,
   561 U.S. 593 (2010) -------------------------------------------- 16–17, 32, 35

*buySAFE, Inc. v. Google, Inc*.,
   765 F.3d 1350 (Fed. Cir. 2014) ----------------------------------*passim*

*Cambridge Toxicology Grp., Inc. v. Exnicios*,
   495 F.3d 169 (5th Cir. 2007) -------------------------------------------- 15

*Clear With Computers LLC v. Altec Indus., Inc*.,
   6:14-cv-00089, 2015 U.S. Dist. LEXIS 28816 (E.D. Tex. Mar.
   3, 2015), *aff'd*, No. 2015-1525, --- F. App'x ---, 2016 WL
   494593 (Fed. Cir. Feb. 9, 2016) ------------------------------------- 21

*Cloud Satchel, LLC v. Amazon.com, Inc.*,
  76 F. Supp. 3d 553, 562-63 (D. Del. 2014), *aff'd sub nom.*
  *Cloud Satchel, LLC v. Barnes & Noble, Inc.*, No. 2015-1261,
  2015 U.S. App. LEXIS 22673 (Fed. Cir. Dec. 17, 2015) ---------------- 21, 26

*Cloud Satchel, LLC. v. Barnes & Noble, Inc. and Amazon.com,
  Inc.*,
  Nos. 2015-1261, -1262, 2015 U.S. App. LEXIS 22673 (Fed.
  Cir. Dec. 17, 2015) --------------------------------------------------------------- 4, 29

*Content Extraction & Transmission LLC v. Wells Fargo Bank,
  N.A.*,
  776 F.3d 1343 (Fed. Cir. 2014) -----------------------------------------------*passim*

*Control Power Sys., Inc. v. TIF Instruments, Inc.*,
  884 F.2d 1399 (Fed. Cir. 1989) ----------------------------------------------- 24

*Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*,
  558 F. App'x 988 (Fed. Cir. 2014) ------------------------------------------- 26

*CyberSource Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed. Cir. 2011) ---------------------------------------------- 23

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2104) -----------------------------------------------*passim*

*Dealertrack, Inc. v. Huber*,
  674 F.3d 1315 (Fed. Cir. 2012) ------------------------------------ 19, 25, 31

*Diamond v. Diehr*,
  450 U.S. 175 (1981) ----------------------------------------------------------- 39

*DietGoal Innovations LLC v. Bravo Media LLC*,
  33 F. Supp. 3d 271 (S.D.N.Y. 2014), *aff'd*, 599 F. App'x 956
  (Fed. Cir. 2015) --------------------------------------------------------------- 21

*Douglass v. United Servs. Auto. Ass'n*,
  79 F.3d 1415 (5th Cir. 1996) (en banc) ----------------------------------- 40

*Edwards v. Shinseki*,
  582 F.3d 1351 (Fed. Cir. 2009) ---------------------------------------------- 41

*Gametek LLC v. Zynga, Inc.*,
  No. CV 13-2546 RS, 2014 U.S. Dist. LEXIS 58061 (N.D. Cal.
  Apr. 25, 2014), *aff'd*, 597 F. App'x 644 (Fed. Cir. 2015) -------------------- 21

*Guidry v. Am. Pub. Life Ins. Co.*,
  512 F.3d 177 (5th Cir. 2007) ------------------------------------------------- 15

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
  792 F.3d 1363 (Fed. Cir. 2015) ----------------------------------------*passim*

*Internet Patents Corp. v. Active Network, Inc.*,
  790 F.3d 1343 (Fed. Cir. 2015) ----------------------------------------*passim*

*Isquith v. Middle S. Utilities, Inc.*,
  847 F.2d 186 (5th Cir. 1988) ------------------------------------------------- 38

*Lone Star Fund V (US), LP v. Barclays Bank PLC*,
  594 F.3d 383 (5th Cir. 2010) ------------------------------------------------- 38

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
  66 F. Supp. 3d 829 (E.D. Tex. 2014) (Bryson, J.)-------------------------- 5, 7

*Mayo Collaborative Servs. v. Prometheus Labs.*,
  132 S. Ct. 1289 (2012) --------------------------------------------------*passim*

*Microsoft Corp. v. i4i Ltd. P'ship*,
  131 S. Ct. 2238 (2011) ------------------------------------------------------- 37

*Mortg. Grader, Inc. v. First Choice Loan Servs.*,
  No. 2015-1415, --- F.3d ---, 2016 U.S. App. LEXIS 1115
  (Fed. Cir. Jan. 20, 2016) ------------------------------------ 18, 31, 36, 40

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
  134 S. Ct. 2120 (2014) ------------------------------------------------------- 37

*OIP Techs., Inc. v. Amazon.com, Inc.*,
  788 F.3d 1359 ------------------------------------------------------------*passim*

*Parker v. Flook*,
  437 U.S. 584 (1978) ----------------------------------------------------- 32, 39

*Soverain Software LLC v. Newegg Inc.*,
  705 F.3d 1333 (Fed. Cir. 2013) ----------------------------------------- 39–40

vii

*State St. Bank & Trust Co. v. Signature Fin. Grp., Inc.*,
    149 F.3d 1368 (Fed. Cir. 1998) ---------------------------------------------- 23

*U.S. ex rel. Long v. GSDMIdea City, LLC*,
    798 F.3d 265 (5th Cir. 2015) -------------------------------------------- 15, 38

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014), *cert. denied sub nom.*
    *Ultramercial, LLC v. WildTangent, Inc.*, 135 S. Ct. 2907 (2015) -------*passim*

*Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA, LLC*,
    No. 2015-1411, 2015 U.S. App. LEXIS 22681
    (Fed. Cir. Dec. 28, 2015) ---------------------------------------------------*passim*

*Versata Dev. Grp., Inc. v. SAP Am., Inc.*,
    793 F.3d. 1306 (Fed. Cir. 2015) ------------------------------------- 18, 21, 29

*Wireless Media Innovations, LLC v. Maher Terminals, LLC*,
    100 F. Supp. 3d 405 (D.N.J. 2015), *aff'd*, No. 2015-1634, 2016
    U.S. App. LEXIS 2532 (Fed. Cir. Feb. 8, 2016)------------------------------- 21

*Statutes and Rules:*

    35 U.S.C. § 101 ---------------------------------------------------------*passim*

    Fed. R. Evid. 201 ------------------------------------------------------------ 37

    Fed. R. Civ. P. Rule 12 ------------------------------------------------- 11, 38

## STATEMENT OF RELATED CASES

No other appeal in or from the same civil action or proceeding in the lower court was previously before this or any other appellate court.  Amazon knows of no pending case that will directly affect or be directly affected by the Court's decision in this appeal.  However, consolidated Appeal Nos. 15-18485, -18486, -18487, and -18488 concern challenges to the patent eligibility under 35 U.S.C. § 101 of U.S. Patent No. 7,970,379, a patent owned by Appellant Affinity Labs of Texas, LLC ("Affinity") that shares a substantially similar specification with the patent at issue in this appeal.

## JURISDICTIONAL STATEMENT

Amazon agrees with the jurisdictional statement of Affinity.

## COUNTERSTATEMENT OF THE ISSUES

Whether the claims of U.S. Patent No. 8,688,085 (the "'085 patent") are invalid under 35 U.S.C. § 101 because they recite only the naked idea to select media from a library on a remote network for replay on a generic portable device and are devoid of any particular or limiting, to say nothing of arguably inventive, way of applying this naked idea, or achieving this result, other than by using the very sort of generic computing devices performing the very sort of generic computing functions that the Supreme Court and this Court have consistently held to be insufficient to transform a naked idea into a patentable invention.

## INTRODUCTION

This case involves an unremarkable application of settled law to an unremarkable set of undisputed facts.  Affinity's patent—no matter how described—claims no more than a naked idea executed on conventional computing components used for their conventional and inherent purposes.  The patent is an aspirational list of results disembodied entirely from any particular way of achieving them—the very definition of an abstraction.  There is no new machine.  There is no new way of using old machines.  In fact, there is no *particular* way—the hallmark of invention—of doing anything.  No decision of this Court in the wake of *Alice Corp Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014), has come close to allowing such a patent to stand.  And for good reason.  The hard work of true invention, to say nothing of a decent respect for the innovating public, demands a far greater contribution to the public store of knowledge before our patent laws remove such vast swaths of technology—both present and future—from the public domain.  *See Mayo Collaborative Servs. v. Prometheus Labs.*, 132 S. Ct. 1289, 1303 (2012) ("[T]he underlying functional concern here is a relative one: how much future innovation is foreclosed relative to the contribution of the inventor.").

Affinity's brief has an especially anachronistic ring to the post-*Alice* ear.  Affinity warns the Court that this case threatens most if not all patents, including such technological wonders as MRI machines and heart valves.  But one can

scarcely imagine a case that merits less concern. Affinity's patent has nothing to do with any advancement in any computing technology, and, to the extent technology is even mentioned, the patent simply invokes extant and conventional devices—used somehow, someway (the patent does not care)—to achieve its aspirational results.

Especially odd is Affinity's reminder to the Court that the Patent Office issued the patent and thus found the claims to be novel. Novelty is not eligibility, even putting aside the self-evident fact that every decision of this Court to strike a patent under § 101 necessarily involved a patent that had issued from the Patent Office.

Over and again, Affinity protests that its claims recite concrete and tangible hardware and software elements, including and especially some unidentified custom user interface. But while the hardware elements may be concrete and tangible, they are also entirely conventional and entitled to no inventive weight according to an unbroken chain of controlling decisions from the Supreme Court and this Court. And while Affinity's claims certainly mention the use of software, they reference only unidentified "instructions" that could be "configured" somehow to cause a generic "processor" to achieve these naked results. The specification, with its black boxes masquerading as real figures, is no more robust. Black boxes labeled with even novel software functions are, of course, not inventions. They are instead

aspirational place holders waiting to be filled by the real and difficult work of true invention performed by the public at a later date.  There is nothing concrete or tangible about inviting the public to invent the very technology that a patent claims to remove from the public domain.  Such vague and vacuous recitations of the words "instructions" and "user interface"—generic catch-alls used solely to ensnare *any* future software or *any* future interface invented by the public no matter how innovative—create the very preemption concerns that § 101 is intended to prevent.

Finally, Affinity argues that its claims are unlike any of the claims that this Court has found ineligible since *Alice*.  Charitably speaking, that assertion is wrong, as discussed below.  But it is worth highlighting here that the last time this Court considered a patent claiming the use of generic portable devices to access generic remote media libraries over a generic network, this Court did not dignify the dispute with an opinion.  *See Cloud Satchel, LLC. v. Barnes & Noble, Inc. and Amazon.com., Inc.*, Nos. 2015-1261, -1262, 2015 U.S. App. LEXIS 22673 (Fed. Cir. Dec. 17, 2015) (affirming pursuant to Fed. R. App. P. 36 a district court judgment applying § 101 to invalidate all claims of two Xerox patents whose purpose was to solve the problem of limited memory on remote devices by linking those devices to remote libraries).

In the end, Affinity's patent is a classic example of a category of patents—now recognized as hostile to the very the purpose of our patent system—that simp-

ly describe an aspiration, announce purely functional and generic steps for achieving it, and then rely on conventional computer components to perform those steps without any inventive concept or something significantly more than an idea or objective. The problem with such patents—as Judge Bryson has pointedly explained—is that they contribute nothing to the public store of knowledge even while depriving the public of the benefits from the hard work of true invention performed by others:

> [S]uch patents, although frequently dressed up in the argot of invention, simply describe a problem, announce purely functional steps that purport to solve the problem, and recite standard computer operations to perform some of those steps. The principal flaw in these patents is that they do not contain an "inventive concept" that solves practical problems and ensures that the patent is directed to something "significantly more than" the ineligible abstract idea itself. As such, they represent little more than functional descriptions of objectives, rather than inventive solutions. In addition, because they describe the claimed methods in functional terms, they preempt any subsequent specific solutions to the problem at issue.

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 845 (E.D. Tex. 2014) (Bryson, J.) (internal citations omitted). Those words could have been written for this case.

The district court's judgment is entirely correct and should be affirmed.

## COUNTERSTATEMENT OF THE CASE

### A.    The '085 Patent

The idea of providing selected music or other recorded content to consumers

on a portable device is nothing new.  It has been implemented over the last century on a host of portable devices using a range of evolving technologies, from the transistor radio, to the Walkman, to MP3 players.

The '085 patent admits as much, conceding that this well-known idea dates to "around 1920," but that it now can be implemented over the Internet using cellular phones and satellite radio.  (A57 at 1:22-24, 1:28-29; A58 at 4:33-39, 4:47-50, 4:58-66.)  That supposed insight is the entire inventive contribution.  The patent is entirely agnostic about any particular way of achieving this aspiration.  To the contrary, the patent boasts that the invention "is not limited to any specific configuration" and "is not limited to any one specific type of software" (A58 at 4:41-45; A61 at 10:10-11) so long as a user can select content for transmission to a mobile device, use a mobile device to receive the content over a wireless communication network, and play or manage the content on the device.  (*See, e.g.*, A57-58 at 2:53-3:3.)

Figure 1 of the patent shows this alleged invention as four boxes: (1) a storage device box 105; (2) a digital engine box 101; (3) a communication engine box 102; and (4) an electronic device box 103.  (A49 at Fig. 1;



FIG. 1

6

A58 at 3:29-59.)  Each box is described in purely functional terms.  The storage device is a device "operable to store information," *i.e.*, any computer memory.  (*Id.* at 3:36.)  The digital engine, like any computing device, maintains data "in a digital format," including "MP3 file, wave file, etc.," and can be "directly or indirectly coupled to [the] storage device."  (*Id.* at 3:31-38, 47-49; *see also id.* at 4:11-15.)  The communication engine transmits user-selected media wirelessly to the electronic device  (*id.* at 3:42-44; *see also id.* at 4:47-50), but it is "not limited to any specific configuration" and may use any of several conventional means, including satellite communications and even AM/FM radio bands.  (A58-59 at 4:41-5:3.)  And the portable electronic device is any mobile electronic device with "a conventional receiver" "operable to receive wireless communications," which can be "a network radio, a modular device, an audio system, a personal digital assistant (PDA), a cellular phone, or other electronic devices operable to receive information wirelessly."  (*Id.* at 3:60-65, 4:25-38; A60 at 8:55-57.)  Figure 3 shows this generic portable electronic device as another three boxes labeled with conventional computing component names performing conventional computing functions:



**FIG. 3**

(A50.)  Finally, the media played on the electronic device can be any form of audio, including Internet radio, music, voice mail, or video.  (*See, e.g.*, A60 at 8:8-10 (music); A57 at 2:60-67 (on-line radio stations); A63 at 14:30-31 (voicemail); A58 at 3:16-20 and A66 at claims 7, 10 (video).)

To be sure, the claims also recite a customized user interface (A65 at 18:51, A66 at 20:9, 20:14, 20:47), which is the element on which Affinity relies most heavily for evidence of an inventive concept.  (Affinity Br. at 14.)  But the patent depicts this interface as nothing more than a generic "Internet website."[1]  (A58 at 4:6-8.)  Figure 4 illustrates it:



FIG. 4

(A51 at Fig. 4; *see also* A61 at 9:65-10:2 (stating that the user interface "may be

---

[1]  Internet websites presenting personalized content were ubiquitous in the 1990s.  Web-based email systems such as Hotmail and Yahoo! Mail presented what Affinity claims to be a "customized" interface to each user with that user's email.  Amazon's own website, www.amazon.com, personalized its interface for each customer by name and by displaying personalized product recommendations.

displayed using a conventional web browser").)  The patent is agnostic here, too, about any particular way of implementing this interface or any special programming to make it.

The claims are no more particular.  Three are independent: 1, 8 and 14. Claim 14 is representative:

> 14. A media system, comprising:
>
> a network based media managing system that maintains a library of content that a given user has a right to access and a customized user interface page for the given user;
>
> a collection of instructions stored in a non-transitory storage medium and configured for execution by a processor of a handheld wireless device, the collection of instructions operable when executed:  (1) to initiate presentation of a graphical user interface for the network based media managing system; (2) to facilitate a user selection of content included in the library; and (3) to send a request for a streaming delivery of the content; and
>
> a network based delivery resource maintaining a list of network locations for at least a portion of the content, the network based delivery resource configured to respond to the request by retrieving the portion from an appropriate network location and streaming a representation of the portion to the handheld wireless device.

(A66 at 20:6-24.)  The claim recites a generic "network based" system, generic "instructions" for execution by a generic "processor" and a generic "network based" resource, all performing basic functions ("maintaining" (*i.e.*, storing) content, "initiating presentation" of an interface, "facilitating a user selection of con-

tent" (*i.e.*, allowing a user to click on content), "sending," and "responding"). Stated differently, the claim seeks to remove from the public domain the very idea of storing content on a web server, presenting a graphical user interface to a user for selection of content to play on a portable wireless device, and streaming the selected media from the web server to the device—using *any* present or future computer technology. Claims 1 and 8 recite the same idea. Claim 1 discloses a generic website that makes media content available to a user who has logged in, and a generic wireless handheld device for browsing and playing that content. (A65 at 18:23-47.) Claim 8 recites a method that corresponds to the system claims, but adds the routine steps of purchasing and receiving content and adding it to a library. (A66 at 19:22-42.)

### B.    The Proceedings Below

Affinity is a patent assertion entity primarily in the business of licensing its patents. Last year, it launched a litigation campaign against Amazon and others, asserting two patents in the same family that share a substantially similar specification. *See* Appeal Nos. 15-1845, 15-1846, 15-1847, 15-1848 (concurrent appeals involving Affinity's U.S. Patent No. 7,970,379). Amazon is one of the world's leading technology companies and, through its popular Kindle® products, has changed the way the public acquires and consumes electronic media, including books, audio and video. Amazon also developed the accused Amazon Music ser-

vice and application, which provide users access via Kindle devices, other tablets, smartphones, and computers to an extensive library of audio content stored on a cloud server.

On April 30, 2015, Amazon moved for judgment on the pleadings pursuant to Rule 12(c) on the ground that the '085 patent is invalid under 35 U.S.C. § 101. (A480.)  Affinity opposed the motion and also submitted a declaration of opinion testimony by Kevin C. Almeroth (the "Almeroth Declaration").  (A522-48; A549-53.)

The district court referred the motion to the Magistrate Judge, who recommended that the court enter judgment for Amazon.  (A12.)  The Magistrate Judge found that the '085 patent was drawn to the idea of "delivering selectable media content and subsequently playing the selected content on a portable device."  (A23, A26, A28.)  Noting that this idea had been carried out by transistor radios and portable televisions decades before the patent, he found this purpose to be a longstanding practice.  (A26.)  He found also that the claims are "devoid of any tangible or concrete application," noting that the "inclusion of 'tangible' components" such as a handheld wireless device "d[id] nothing to transform the naked concept into something concrete."  (A28.)  He found further the claims "merely take[] the abstract idea [] and appl[y] it to the Internet and a generic electronic device—in this case, a wireless handheld device," and "set forth routine and generic

11

processing and storing capabilities of computers generally." (A30.) He found, too, that the claims are "devoid of any specific technology or instructions that explain how the device can do what it purports to do or direct the practitioner how to carry out the claims." (A32.) He also expressed concern that the '085 patent might "curb any innovation related to the implementation of the abstract idea on potentially any portable device that utilizes the Internet." (A37-38.) Finally, the Magistrate Judge declined to convert Amazon's motion into a motion for summary judgment and recommended granting Amazon's motion to strike the Almeroth Declaration, finding the conclusory testimony unnecessary for resolution of an issue of law. (A21 n.6.)

On June 26, 2015, Affinity objected to the report and recommendation. (A661-A689.) The district court overruled the objections and adopted the recommendation. (A2-11.) The district court entered final judgment on September 23, 2015. (A1.)

## SUMMARY OF ARGUMENT

The district court properly resolved this case under a straightforward application of *Alice* and this Court's decisions applying *Alice* and § 101 of the Patent Act. Under those precedents, the '085 patent claims are not even remotely eligible.

The '085 patent claims the naked idea of delivering selectable media (*e.g.*, audio or video) for playback on a portable device. The problem the patent ad-

dresses is longstanding—playing media on the go. But the patent offers no particular solution. Instead, it discloses purely functional steps performed by extant generic technology from which *someone else* would need to invent a solution. Its claims violate § 101 as a matter of law—a conclusion compelled by the Supreme Court's decision in *Alice* and this Court's subsequent decisions involving claims that merely engraft generic computers performing generic functions onto otherwise naked ideas.

All of Affinity's arguments have been rejected repeatedly by this Court and the Supreme Court. At step one of the *Alice* framework, Affinity argues that the district court was wrong in finding the '085 patent directed to an abstract idea because it does not claim a mathematical algorithm or fundamental economic practice. Neither the Supreme Court nor this Court, however, has limited § 101's concerns to these particular categories. To the contrary, this Court has repeatedly held invalid computer-implemented methods and corresponding systems that were not aimed at either mathematical algorithms or fundamental economic practices. And contrary to Affinity's assertion, in applying step one, the court must analyze the patent's objective apart from its particular implementation. The recited generic computer components cannot define the purpose of the '085 patent.

At step two of the *Alice* framework, Affinity argues that the patent's inventive contribution is an undisclosed software application that creates a custom-

ized user interface running on a wireless device. But the '085 patent is agnostic about any particular way of implementing or "customizing" the interface, and it fails to describe any improvement to well-known interfaces or any other way to achieve the patent's claimed results. Rather, the specification expressly states that the "customized user interface" need not use any improved technology or any particular technology at all. The fact that Affinity points to a "customized user interface," which the patent describes as a mere generic Internet website, as *the* claim element that confers patent eligibility shows how lacking the '085 patent is in anything even approaching an inventive contribution.

Affinity's attempt to generate an evidentiary error also fails. This Court has repeatedly recognized that § 101 rulings may be made on the pleadings without fact-finding. Nor was there error in striking Affinity's conclusory expert declaration. The district court was more than competent to determine from the face of the '085 patent that its claims are patent-ineligible. The district court's judgment should be affirmed.

## ARGUMENT

### I.    STANDARD OF REVIEW

Whether a patent claims eligible subject matter is a question of law, which this Court reviews *de novo*. *OIP Techs., Inc. v. Amazon.com, Inc*., 788 F.3d 1359, 1362 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 701 (2015). Both this Court and the Fifth Circuit review a judgment on the pleadings *de novo*. *buySAFE, Inc. v.*

*Google, Inc.*, 765 F.3d 1350, 1352 (Fed. Cir. 2014); *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).  For purposes of a motion for judgment on the pleadings, the Court need not accept legal conclusions in the complaint and must "draw on its judicial experience and common sense."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 679 (2009).

This Court reviews for abuse of discretion both the district court's decision not to convert a motion for judgment on the pleadings to a motion for summary judgment and its decision to strike unnecessary testimony.  *U.S. ex rel. Long v. GSDMIdea City, LLC*, 798 F.3d 265, 275 (5th Cir. 2015); *Cambridge Toxicology Grp., Inc. v. Exnicios*, 495 F.3d 169, 178 (5th Cir. 2007).

## II.     THE DISTRICT COURT PROPERLY HELD THAT THE '085 PATENT CLAIMS INELIGIBLE SUBJECT MATTER UNDER 35 U.S.C. § 101.

Under § 101 of the Patent Act, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."  35 U.S.C. § 101.  As the Supreme Court has long recognized, "this provision contains an important implicit exception" for abstract ideas, laws of nature, and natural phenomena, which form the "basic tools of scientific and technological work."  *Alice*, 134 S. Ct. at 2354 (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)) (internal quotations omitted).  The reason for the rule is important.  "[M]onopolization of

those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it." *Mayo Collaborative Servs.*, 132 S. Ct. at 1293. Accordingly, they belong to the "storehouse of knowledge . . . free to all . . . and reserved exclusively to none." *Bilski v. Kappos*, 561 U.S. 593, 602 (2010) (citation omitted).

The Supreme Court has adopted a two-step approach for determining patent eligibility under § 101. *Alice*, 134 S. Ct. at 2355. First, a court must ask whether the claims are directed to one of the patent-ineligible concepts, such as an abstract idea. The Supreme Court has expressly declined to "delimit the precise contours of the 'abstract ideas' category," *id.* at 2357, and this Court has found a wide range of claims directed to abstract ideas, including claims reciting various ways of providing tailored media content over the Internet. *See, e.g.*, *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370-71 (Fed. Cir. 2015); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014), *cert. denied sub nom. Ultramercial, LLC v. WildTangent, Inc.*, 135 S. Ct. 2907 (2015). As this Court has cautioned, "[a]n abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as the Internet." *Intellectual Ventures*, 792 F.3d at 1366.

Second, the court must decide whether the claims add an "inventive con-

cept"—"an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [concept] itself.'" *Alice*, 134 S. Ct. at 2355 (quoting *Mayo*, 132 S. Ct. at 1294). Unless these additional elements add something significant to the abstract idea, the claim is ineligible. *Id.* As this Court has repeatedly held, merely implementing a naked idea using well-known computer components or functions, limiting the idea to a particular technological environment, or adding other token steps is insufficient. *Id.* at 2357-59; *see also*, *e.g.*, *Bilski*, 561 U.S. at 610-11; *Ultramercial*, 772 F.3d at 714.

The Supreme Court held in *Alice* that claims drawn to the idea of intermediated settlement were patent-ineligible despite reciting generic, functional computer components (including a "data processing system," a "communications controller" and a "data storage unit") and well-worn computer functions (including storing, updating, and transmitting data). 134 S. Ct. at 2358-60. Since *Alice*, this Court has repeatedly applied the same framework to invalidate patents that do nothing more than claim a generic computer implementation of an otherwise naked idea. For example, in *Ultramercial*, this Court held that claims reciting an eleven-step method for obtaining online media content were directed to the idea of allowing a user to access free, user-selected media in exchange for watching an advertisement, but were patent-ineligible because they merely implemented that idea on the Internet with generic computer components. 772 F.3d at 714-17. In *Intellectual Ventures*,

this Court held that claims reciting an interactive interface for customizing web pages were directed to the abstract idea of tailoring media content based on a user's characteristics and history because they merely recited a "computer brain" for implementing that idea.  792 F.3d at 1369-71.  The Court reached the same result in numerous other cases.  *See, e.g.*, *Mortg. Grader, Inc. v. First Choice Loan Servs.*, No. 2015-1415, --- F.3d ---, 2016 U.S. App. LEXIS 1115 (Fed. Cir. Jan. 20, 2016); *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d. 1306, 1333-34 (Fed. Cir. 2015); *Internet Patents*, 790 F.3d at 1348; *OIP Techs.*, 788 F.3d 1359; *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347 (Fed. Cir. 2014); *buySAFE*, 765 F.3d at 1355.  The same result, unremarkably, follows here.

### A.    The '085 Patent Is Drawn to the Abstract Idea of Delivering Selectable Media Content and Subsequently Playing the Selected Content on a Portable Device.

The naked idea of playing media—including the concept of transmitting selected media for playback on a portable device—belongs in the public domain. Affinity's claims on their face are directed to this basic idea.  The specification explains that the purpose of the claims is to use conventional technology to wirelessly communicate media to a portable electronic device.  (A57 at 2:53-55.)  Common sense teaches that this idea predates the patent—indeed, the idea is as old as the transistor radio or portable television, both of which allowed the user to select and receive media content by changing the station.  And that idea is indistinguishable

from—and, indeed, even more abstract than—many others this Court has found abstract, such as the concepts of providing free user-selected online media content once a user watches an advertisement (*Ultramercial*), customizing media content based on a user's characteristics and history (*Intellectual Ventures*), and retaining user-inputted information in the navigation of online forms (*Internet Patents Corp.*).

Affinity's claim terms are purely functional, without any specific guidance, let alone a preference, for any specific technology that a practitioner should or could use to implement them. The specification is no different. It depicts the invention as four boxes, each of which is labeled with purely functional terms. (A49 at Fig. 1.) The specification and the claims are entirely agnostic as to the implementation of the claimed result and disclose no new or improved technology (such as special programming) to achieve it. *See Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012) (claims ineligible because they "do[] not specify how the computer hardware and database are specially programmed to perform the steps claimed in the patent"); *Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA, LLC*, No. 2015-1411, 2015 U.S. App. LEXIS 22681, at *5-6, 10 (Fed. Cir. Dec. 28, 2015) (similar). In other words, the '085 patent fails to disclose any specific application, handheld device, user interface, or system for streaming media over the Internet. It merely suggests the idea that an undefined system *could* be

developed that *could* make media available on a portable device using those generic components. This is not an invention. It is a wish. The actual inventing is left to the public.

Affinity contends that the district court improperly ignored claim elements in identifying the abstract idea. (Br. 26-27.) It did not. In deciding whether claims are directed to an abstract idea at step one of the *Alice* analysis, courts are *required* to "ascertain[] the basic character of the subject matter" of the claims, *Internet Patents*, 790 F.3d at 1348, and identify the "concept embodied by the majority of the limitations" to locate the idea "at the heart of the patent-in-suit," *Ultramercial*, 772 F.3d at 714-15. And the district court did just that. Its description of the abstract idea merely exposes the true character of the claims.[2]

Affinity next argues that only a fundamental economic practice or mathematical algorithm counts as an abstract idea because the Supreme Court has invalidated patents in only those two categories. (Br. 20.) But the Supreme Court expressly declined to "delimit the precise contours of the 'abstract ideas' category." *Alice*, 134 S. Ct. at 2357. Following this guidance, this Court has held abstract numerous ideas that do not fit Affinity's narrow view, including collecting data, recognizing certain data within the collected data set, and storing the recognized

---

[2] *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 345 (1961) (cited at Br. 26) is irrelevant; it does not address § 101 eligibility.

data in a memory, *Content Extraction*, 776 F.3d at 1347, retaining information in the navigation of online forms, *Internet Patents*, 790 F.3d at 1348, testing operators of moving equipment for physical or mental impairment, *Vehicle Intelligence*, 2015 U.S. App. LEXIS 22681, at *5-6, determining a price, using organizational and product group hierarchies, *Versata*, 793 F.3d at 1333, and showing an advertisement before delivering free content, *Ultramercial*, 772 F.3d at 715.[3] None of these ideas is confined to a mathematical algorithm or fundamental economic concept. Nor would it make any sense for the abstract ideas category to be so narrowly defined. Mathematical algorithms and fundamental economic con-

---

[3] District courts, too, have found ideas beyond mathematical formulas and fundamental economic practices to be abstract in numerous decisions that this Court has summarily affirmed. *See, e.g.*, *Clear With Computers LLC v. Altec Indus., Inc.*, 6:14-cv-00089, 2015 U.S. Dist. LEXIS 28816, at *11 (E.D. Tex. Mar. 3, 2015) (creating customized sales proposal for customer), *aff'd*, No. 2015-1525, --- F. App'x ---, 2016 WL 494593 (Fed. Cir. Feb. 9, 2016); *Wireless Media Innovations, LLC v. Maher Terminals, LLC*, 100 F. Supp. 3d 405, 413-14 (D.N.J. 2015) (monitoring location of shipping containers within a yard), *aff'd*, No. 2015-1634, 2016 U.S. App. LEXIS 2532 (Fed. Cir. Feb. 8, 2016); *Cloud Satchel, LLC v. Amazon.com, Inc.*, 76 F. Supp. 3d 553, 562-63 (D. Del. 2014) (cataloging documents to facilitate their retrieval from storage by a remote device with limited memory), *aff'd sub nom. Cloud Satchel, LLC v. Barnes & Noble, Inc.*, No. 2015-1261, 2015 U.S. App. LEXIS 22673 (Fed. Cir. Dec. 17, 2015); *Joao Block Transaction Sys., LLC v. Jack Henry & Assocs. Inc.*, 76 F. Supp. 3d 513, 522 (D. Del. 2014) (transaction security based on account instructions), *aff'd*, 803 F.3d 667 (Fed. Cir. 2015); *DietGoal Innovations LLC v. Bravo Media LLC*, 33 F. Supp. 3d 271, 283-84 (S.D.N.Y. 2014) (meal-planning), *aff'd*, 599 F. App'x 956 (Fed. Cir. 2015); *Gametek LLC v. Zynga, Inc.*, No. CV 13-2546 RS, 2014 U.S. Dist. LEXIS 58061, at 14* (N.D. Cal. Apr. 25, 2014) (allowing players to purchase objects during game), *aff'd*, 597 F. App'x 644 (Fed. Cir. 2015).

cepts are not the only "basic tools of scientific and technological work." *Alice*, 134 S. Ct. at 2354.

Affinity repeatedly protests that its claims are "concrete and tangible," "reciting a "machine" and other computer implemented features. (*E.g.*, Br. 13-14, 18-19, 29.)  But that was precisely the issue resolved in *Alice*, where the Supreme Court held that formally reciting a "machine," such as a "tangible system" or "computer-implemented claims," is *not* sufficient under § 101.  134 S. Ct. at 2359. And this Court has likewise found claims ineligible under § 101 notwithstanding "concrete and tangible" computer-implemented features.  For example, in *Internet Patents*, the Court concluded that the "essential, 'most important aspect'" of the claims was an abstract idea, even though there was no pre-computer or pre-Internet analog for the idea and the patentee (like Affinity) argued that the claims represented "a tangible and useful improvement over prior computer-implemented methods."  790 F.3d at 1348, 1345.  And in *Content Extraction*, this Court found claims directed to an abstract idea even though, if construed in the light most favorable to the patentee, they would require scanners and processing technology. 776 F.3d at 1349; *see also*, *e.g.*, *buySAFE*, 765 F.3d at 1353 (§ 101 "also excludes the subject matter of certain claims that by their terms read on a human-made physical thing"); *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013) (holding computer system claims ineligible under

§ 101), *cert. denied*, 134 S. Ct. 2871 (2014); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1374 (Fed. Cir. 2011) ("Regardless of what statutory category ('process, machine, manufacture, or composition of matter,' 35 U.S.C. § 101) a claim's language is crafted to literally invoke, we look to the underlying invention for patent-eligibility purposes.").

At root, Affinity's § 101 analysis seeks to exhume the overruled test of *State Street Bank & Trust Co. v. Signature Financial Group, Inc.*, 149 F.3d 1368 (Fed. Cir. 1998), under which "a computer-implemented invention was considered patent-eligible so long as it produced a 'useful, concrete and tangible result.'" But under modern Supreme Court doctrine culminating in *Alice*, that is no longer enough. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1255 (Fed. Cir. 2104) (quoting *State Street* and explaining it is no longer the law). At *Alice* step one, courts assess whether the claims are fundamentally directed to an abstract idea notwithstanding the computer implementation. Just as in *Alice* and the numerous other cases discussed herein, the '085 patent claims are, at heart, directed to a naked idea—here, to selecting, streaming, and playing streaming media on a portable electronic device. Unless the claims add an inventive concept to this naked idea, they fail.

### B.    The Claim Elements Add Nothing Inventive.

The '085 patent claims recite nothing even arguably inventive that could

make them into something significantly more than a naked idea. Instead, they re-cite generic hardware and software operating conventionally, and are agnostic as to the way a practitioner could or should use these elements. Under *Alice* itself and numerous cases from this Court that follow, that is plainly insufficient. *See Alice*, 134 S. Ct. at 2359-60.

### 1. The Claim Elements on Which Affinity Relies Do Not Transform the Abstract Idea into a Patent-Eligible Invention.

Affinity argues that the claims satisfy step two of the *Alice* test because they include limitations that were not routine or conventional at the time of invention.[4] (Br. 4-5, 35.) According to Affinity, the same attribute it emphasized in its step one analysis—an application for a wireless handheld device that includes a cus-tomized user interface—supplies an inventive concept because it is not generic, well-known, routine, or conventional. (*Id.* at 19, 34-35.) Affinity's argument is foreclosed by numerous precedents.

There is nothing inventive about the "customized user interface" claimed by the patent. The patent is entirely agnostic as to how it works, what it looks like, or even how it is "customized." The specification requires only that it be "operable

---

[4] Affinity argues that the district court applied an inapplicable "technological arts" test. (Br. 31-32; A31 (citing *Ultramercial*, 772 F.3d at 721 (Mayer, J., con-curring).) But "the appropriate legal analysis was applied irrespective of the name of the test which Affinity would like to attach to it." (A8 (rejecting Affinity's chal-lenge to the magistrate's *Alice* analysis).) In all events, this Court "reviews judg-ments, not language in opinions." *Control Power Sys., Inc. v. TIF Instruments, Inc.*, 884 F.2d 1399 (Fed. Cir. 1989).

with a computer system, cellular device, PDA, or other electronic devices or systems operable to display the GUI," including a conventional web browser, and illustrates it as a generic Internet webpage. (A61 at 9:63-67.) Accordingly, it could take virtually any form, such as a display of a radio dial with presets or just a list of songs previously selected by the user. This Court has repeatedly rejected the argument that such a generic "interface" can provide an "inventive concept." *See, e.g.*, *Internet Patents*, 790 F.3d at 1348-49 ("intelligent user interface" that maintained states across panes is not inventive); *Intellectual Ventures*, 792 F.3d at 1370 ("interactive interface" that customized web content is not inventive as it is merely a "software brain" for implementing the abstract idea); *see also Dealertrack*, 674 F.3d at 1333 (clearinghouse for selectively forwarding information is not inventive because it "does not specify how the computer hardware and database are specially programmed") (citation omitted).

Nor did Affinity invent or improve a wireless handheld device. To the contrary, the specification confirms that the wireless device consists of off-the-shelf hardware provided that it has a "conventional receiver" and a "conventional audio system." (A60 at 8:56, A65 at 17:21-22.) The specification also describes the "terrestrial communication network"—presumably used for implementing the "network based media management system"—as "conventional." (A58 at 4:23-24.). Such limitations have also been repeatedly found non-inventive. *See, e.g.*,

*Alice*, 134 S. Ct. at 2360 ("communications controller" is not inventive); *OIP*, 788 F.3d at 1363 (sending "electronic messages over a network to devices" is not inventive); *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 993 (Fed. Cir. 2014) (generic phone operating in conventional manner is not inventive); *Cloud Satchel, LLC v. Amazon.com, Inc.*, 76 F. Supp. 3d 553, 563-64 (D. Del. 2014) (networked portable device is not inventive), *aff'd sub nom. Cloud Satchel, LLC v. Barnes & Noble, Inc.*, Nos. 2015-1261, -1262, 2015 U.S. App. LEXIS 22673 (Fed. Cir. Dec. 17, 2015).

It is no answer for Affinity to claim (Br. 37) that the combination of a customized interface and wireless handheld device was novel. In *Ultramercial*, this Court found the claims patent-ineligible even though "some of the . . . steps were not previously employed in this art." 772 F.3d at 716. And, in *Internet Patents*, even if the recited elements represented something novel, the claim was still invalid because it provided "no restriction on *how* the result is accomplished." 790 F.3d at 1348 (emphasis added). The same conclusion follows here.

Affinity also argues that the claims are eligible because they recite a "system" that addresses "problems specifically arising in the realm of media management." (Br. 38-39.) But the specification does nothing to describe this field of "media management," and neither does Affinity on appeal. (Br. 35, 39.) At most, it appears to be akin to simply cataloging media—including, for example, organiz-

ing a record collection or keeping a list of songs.  And Affinity itself admits that it did not invent digital music libraries.  (Br. 4.)  But even assuming "media management" were a computer-based field, the '085 patent is once again agnostic as to the way to manage media, or stream media, or program and design a user interface, or implement an application with a customized user interface.

This Court's decision in *DDR Holdings* only underscores what is missing here.  This Court found that the patent at issue in *DDR Holdings* dealt with a problem unique to the Internet:  Internet users visiting one website might be interested in viewing products sold on a different website, but conventional use of the Internet hyperlink protocol would require that the owners of the first website redirect users away from their website to the other website of interest.  *Id.* at 1257-58.  To address the problem of retaining website visitors, the claimed solution used a series of steps that created a hybrid web page incorporating "look and feel" elements from the host website with commerce objects from the third-party website.  *Id.* "[T]he claimed solution [was] rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks."  *Id.*  It did not "broadly and generically claim 'use of the Internet' to perform" a naked idea "with insignificant added activity."  *Id.*  It claimed "how interactions with the Internet are manipulated to yield a desired result—a result that overrides the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink."  *Id.*

Accordingly, the Court held the patent at issue in *DDR Holdings* (1) did not fore-close other ways of solving the problem, and (2) recited a specific series of steps that resulted in a departure from the routine and conventional sequence of events after the click of a hyperlink. *Id.* at 1256-57, 1259.

The '085 patent claims are different. First, unlike the patent in *DDR Holdings*, the '085 patent is directed to the problem of enjoying media on the go—a problem that arises *outside* of the Internet or any other technological field. In *Intellectual Ventures*, although the claims recited an interface for customizing and displaying web pages based on user-specific information, this Court found them akin to the pre-Internet practice of tailoring media content, as in newspaper inserts or television advertisements, and held that they "do not address problems unique to the Internet, so *DDR* has no applicability." *Intellectual Ventures*, 792 F.3d at 1371. The same is true here. The claims in the '085 patent address a concern (providing select media content) that long predates computers and the Internet. *See also DDR Holdings*, 773 F.3d at 1257 (claims that "merely recite the performance of some business practice known from the pre-Internet world along with the re-quirement to perform it on the Internet" do not satisfy § 101). Second, also unlike the claims in *DDR Holdings*, the '085 patent claims do not recite a *solution* to the problem—as discussed above, they are entirely agnostic as to the way the patent's four boxes work or solve any problem. *See Internet Patents*, 790 F.3d at 1348 (no

inventive concept where claims did not recite how the key element worked); *Vehicle Intelligence*, 2015 U.S. App. LEXIS 22681, at *5-6. Thus, far from helping Affinity, *DDR Holdings* underscores the shortcomings in the '085 claims here.

### 2.    The Other Claim Elements of the Independent Claims Are Generic or Conventional.

The remaining elements in the independent claims are similarly generic computer components and functions, which Affinity does not even purport to improve. These include such limitations as: a generic media system that uses a generic network; a standard website with a user interface; generic website features such as the ability of users to log-in, browse, listen to, or store media; a generic wireless or handheld device with a generic display, a generic memory, and a generic transceiver; and a generic library or collection of media. (*See* Cls. 1, 8 & 14.) This Court has previously found that these generic elements do not add an inventive concept to a naked idea. *See Ultramercial*, 772 F.3d at 716 (networking components and requests to stream media are non-inventive); *Intellectual Ventures*, 792 F.3d at 1370 (user interface is non-inventive); *Internet Patents*, 790 F.3d at 1348 (web browser and user interface are non-inventive); *Versata*, 793 F.3d at 1334 (storing functions are non-inventive); *Cloud Satchel*, 76 F. Supp. 3d at 563-64 (wireless electronic device is non-inventive).

### 3.    The Dependent Claims Add Nothing Inventive.

The patent's dependent claims are no more particular. As the district court

rightly found, none makes any inventive contribution over the independent claims. (A35-36.) Instead, they simply cover trivial variations on the same idea. Affinity contends that the court erred by failing engage in a separate and individual analysis of each dependent claim. But the district court was not required to expressly set forth reasoning as to each claim individually before concluding that all are ineligible. *See Content Extraction*, 776 F.3d at 1348 (affirming district court's invalidation of 242 claims without individual analysis). In any event, this Court's review of patent eligibility under § 101 is *de novo*.

Affinity contends that dependent claim 15 recites a technical solution. It does not. That claim reads:

> The media system of claim 14, wherein the network based delivery resource is configured: (1) to recognize that the request indicates a need for wireless delivery of the content; and (2) to respond to the request by delivering the portion of the content at a given communication rate.

(A66 at 20:25-29.) But basic networking functions are not even arguably inventive, *see buySAFE*, 765 F.3d at 1355, and the claim recites nothing more. There are no details regarding this purported networking solution. Nor does the claim specify any configuration that will "recognize" the need for wireless delivery and respond at a given "communication rate." It merely states the problem and requires that it be solved, but it does not recite a solution. Nor does the specification.

None of the remaining dependent claims offers a meaningful limitation on

the naked idea of the patent. They recite well-known media types (Cls. 3, 4, and 11), general use of targeted advertising (Cl. 5), generic wireless devices or software (Cls. 2, 12, 13 and 16), conventional networking functions (Cls. 6, 7, 9, and 10), and minor conventional variations on how users access content over a network. (Cls. 17-20.) Rather than supply the '085 patent with an inventive—and thus limiting—concept, the dependent claims actually expand the patent's reach to cover all video, audio, and text media. *See Mayo*, 132 S. Ct. at 1297 (claims must be more than a drafting effort designed to monopolize the ineligible concept). The district court properly invalidated them.[5]

### 4.    The '085 Patent Fails the Machine-or-Transformation Test.

Although not determinative—and many of this Court's recent decisions analyze patent eligibility without discussing it, *e.g.*, *Content Extraction*, 776 F.3d 1343, *OIP*, 788 F.3d 1359, *Internet Patents*, 790 F.3d 1343—the machine-or-transformation test remains "a useful and important clue" to whether claims provide an inventive concept. *See Bilski*, 561 U.S. at 604; *Ultramercial*, 772 F.3d at 715. According to that test, a claim must be tied to a particular machine or appa-

---

[5] Affinity has not argued that the remaining dependent claims add an inventive concept or differ in ways material to eligibility. Under the circumstances, this Court is empowered to treat the claims as rising and falling together. *See Dealertrack*, 674 F.3d at 1331 (declining to consider dependent claims that had not been separately argued on appeal); *see also Mortg. Grader*, 2016 U.S. App. LEXIS 1115, at *18 n.6 (addressing claims together where patentee did not point out any meaningful differences).

ratus and not to general-purpose computing equipment. *Ultramercial*, 772 F.3d at 716. Claims that recite machine elements solely in terms of their functions fail the test. *See Bancorp*, 687 F.3d at 1272-73, 1278. As the district court correctly found, the '085 patent combines a generic mobile electronic device with the Internet. (A30.) The "specialized" components identified by Affinity are merely a generic database, a generic memory, and a generic network capable of transmitting and receiving generic data, all of which are generic, off-the-shelf components performing their generic and inherent functions. *See id.* The machine-or-transformation test therefore confirms that the '085 patent claims only an ineligible idea.

### 5. The Claims Are Unduly Preemptive.

Finally, Affinity's separate argument that the claims do not raise a preemption concern because they do not preempt all applications of the abstract idea—for example, portable CD or DVD players (Br. 45)—fails for two reasons. First and foremost, although "preemption" is a motivating concern of the *Alice* analysis, it is not a freestanding test. The Supreme Court long ago rejected the argument that claims are eligible as long as they do not "wholly pre-empt" an abstract idea. *Parker v. Flook*, 437 U.S. 584, 589-90 (1978).[6] In *Alice*, the Supreme Court set forth

---

[6] For that reason, Amazon's non-infringement defense is not inconsistent with the district court's finding that the '085 patent risks preemption. (*See* Br. 44.) No

the two-step analysis for determining if claims are unduly "pre-empt[ive]."  134 S. Ct. at 2354-55, 2358.  And this Court recently confirmed that "questions on preemption are inherent in and resolved by the [*Alice*] § 101 analysis" and that "the absence of complete preemption does not demonstrate patent eligibility."  *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015); *see also OIP Techs.*, 788 F.3d at 1362-63 ("[T]hat the claims do not preempt all price optimization or may be limited to price optimization in the e-commerce setting do not make them any less abstract."); *Vehicle Intelligence*, 2015 U.S. App. LEXIS 22681, at *8 ("[T]he mere existence of a non-preempted use of an abstract idea does not prove that a claim is drawn to patent-eligible subject matter.").[7]

Second, the claims here *do* preempt a disturbingly wide range of present and future technologies.  "[T]he underlying functional concern here is a relative one: how much future innovation is foreclosed relative to the contribution of the inventor."  *Mayo*, 132 S. Ct. at 1302-03.  As the district court recognized, the '085 patent risks removing from the public domain "implementation of the abstract idea on potentially any portable device that utilizes the Internet" without offering any

---

case has ever held that the only patents ineligible are those as to which there is no available non-infringement defense.

[7] *DDR Holdings* is not to the contrary.  The Court found that the patent recited a specific solution to which its claims were limited and did not attempt to preempt any field.  *See* 773 F.3d at 1259.

particular way of achieving the claimed results.  (A37-38.)  Contrary to Affinity's

assertion, that analysis did not reflect a change in the abstract idea.  (Br. 42-43.)  It

instead reflects a legitimate concern that the '085 patent will unduly foreclose fu-

ture use of the underlying idea in a particular technological area.  *See Alice*, 134

S. Ct. at 2354.  Like the ineligible claims in *Alice* and *Mayo*, the '085 patent un-

doubtedly risks "disproportionately t[ying] up the future use of th[e] idea."  (A38.)

Affinity also argues that the district court could not analyze preemption

without first construing the claims.  (Br. 46.)  But "claim construction is not an in-

violable prerequisite to a validity determination under § 101."  *Content Extraction*,

776 F.3d at 1349; *see also OIP*, 788 F.3d at 1361-63.  And, in any event, Affinity

failed to identify any claim construction issue that could matter.[8]  The ineligibility

of the '085 patent—and its unduly preemptive scope—is clear on its face without

any need for claim construction.

## III.    THE DISTRICT COURT DID NOT ERR IN DECIDING PATENT INELIGIBILITY ON THE PLEADINGS.

Affinity swims upstream again when it argues that the district court erred in

deciding this case on the pleadings.  This Court has repeatedly held that eligibility

---

[8] Affinity contends the district court implicitly construed "handheld wireless device."  (Br. 46.)  However, Affinity does not identify either the district court's implicit construction or an alternative construction that would make a difference. And yet the patent is clear that the wireless device can be any "electronic device." (A58-59 at 3:60-65, 4:25-38; A60 at 8:55-57.)

under § 101 is a question of law that the court can resolve on the pleadings.[9]  *See buySAFE*, 765 F.3d at 1352 (affirming pleading stage judgment of ineligibility under § 101); *OIP*, 788 F.3d at 1362 (same); *Content Extraction*, 776 F.3d at 1349 (same); *Ultramercial*, 772 F.3d at 717 (same); *Internet Patents*, 790 F.3d at 1348-49 (same); *Vehicle Intelligence*, 2015 U.S. App. LEXIS 22681, at *4 (same).  The district court correctly determined it could do the same here.  (A19.)  In so doing, the court did not engage in improper fact finding, ignore any applicable evidentiary presumption, or abuse its discretion in striking an expert declaration that was irrelevant to its ruling on a pure question of law.

### A.     The District Court Did Not Engage in Improper Fact-Finding to Decide Patent Ineligibility.

The district court expressly stated that it ruled on eligibility as a matter of law without the need to resolve any disputed fact issues:

> Although the Court recognizes that the legal analysis under § 101 can contain underlying factual issues, in the instant case, the Court is of the opinion that no factual issues are present, and the Court has adequately resolved the threshold matter of patent eligibility by examining the patent on its face, without considering materials outside the pleadings.

---

[9] Section 101 is a "threshold" test that provides a critical gatekeeping role independent of, and certainly not less stringent than, §§ 102, 103, and 112. *See Bilski*, 561 U.S. at 602; *Mayo*, 132 S. Ct. at 1303-04. Affinity suggests that district courts have taken the "threshold" language too far by resolving § 101 challenges on the pleadings. (Br. 22 n.2.)  But this Court has rejected that argument, repeatedly affirming pleading stage judgments of invalidity under § 101.

(A21 n.6.)  Nonetheless, Affinity contends that the district court engaged in improper fact finding as part of its ruling.  (Br. 49-56.)  Affinity's contention lacks merit.

Affinity does not identify the purported fact issues with precision.  Instead  it offers a list of purported fact findings largely made up of legal or common sense conclusions, such as whether a particular claim limitation is generic, whether the claims add an inventive concept to the idea, and whether the claims risk preempting the idea.  (Br. 47-49.)  These are all issues that this Court has determined as a matter of law based on disclosures in the patent or just plain common sense.  *See Internet Patents*, 790 F.3d at 1348-49; *OIP*, 788 F.3d at 1362-63; *Mortg. Grader*, 2016 U.S. App. LEXIS 1115, at *21-24.

The district court did make common sense observations about the use of the idea claimed in the '085 patent.  It noted that transistor radios and portable TVs represent "just a few" examples that show that delivering and playing media on a portable device is a longstanding commercial practice.  (A26.)  But this, too, follows the Court's own practice and did not require the district court to take formal judicial notice or conduct a summary judgment hearing.  *See, e.g.*, *buySAFE*, 765 F.3d at 1355 ("The claims are squarely about . . . a 'transaction performance guaranty'—that is beyond question of ancient lineage."); *Content Extraction*, 776 F.3d at 1347 ("[B]anks have, for some time, reviewed checks, recognized relevant data

such as the amount, account number, and identity of account holder, and stored that information in their records."); *Intellectual Ventures*, 792 F.3d at 1369-70 ("[N]ewspaper inserts had often been tailored based on information known about the customer . . . [and] television commercials for decades tailored advertisements based on the time of day[.]").[10]

### B. The Clear and Convincing Evidentiary Standard Has No Bearing on Whether the '085 Patent Claims Eligible Subject Matter.

Affinity also argues that "clear and convincing" evidence is required to find the '085 patent claims ineligible under § 101. (Br. 46.) But the Supreme Court in *Alice* and this Court in every case since resolved § 101 patent-eligibility as a matter of law without applying the "clear and convincing" standard. That is unsurprising because "[w]here the ultimate question of patent validity turns on the correct answer to legal questions," the clear and convincing evidence standard "has no application." *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2253 (2011) (concurrence); *see also Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2130 n.10 (2014) (clear and convincing evidentiary standard inapplicable when invalidi-

---

[10] Although the Court typically does not take formal judicial notice of the longstanding use of an abstract idea, it clearly could. The fact that transistor radios and portable TVs have both long enjoyed widespread use is not reasonably subject to dispute and judicially noticeable on appeal. *See* Fed. R. Evid. 201; *see also, e.g.*, *B.V.D. Licensing Corp. v. Body Action Design, Inc.*, 846 F.2d 727, 728 (Fed. Cir. 1988) (taking judicial notice on appeal of a fact regarding use of a widely known trademark).

ty is an issue of law).[11]  Because the district court did not engage in material fact

finding, its decision did not implicate the clear and convincing evidentiary standard

or undermine the statutory presumption of validity.

### C.    The District Court Did Not Abuse Its Discretion in Striking Affinity's Declaration.

Having decided eligibility based on the pleadings and the patent, the district

court had no obligation to consider Affinity's opinion evidence, and did not abuse

its discretion in striking it.  The court's review on a Rule 12 motion is limited to

the pleadings.  *Lone Star Fund V (US), LP v. Barclays Bank PLC*, 594 F.3d 383,

387 (5th Cir. 2010).  An opposing party's submission of materials outside the

pleadings by itself does not convert the motion into a motion for summary judg-

ment.  *GSDMIdea City*, 798 F.3d at 275.  Instead, the court has discretion to in-

clude or exclude extraneous documents from its consideration, and must convert

the motion only if it considers them.  *Isquith v. Middle S. Utilities, Inc.*, 847 F.2d

186, 193 n.3 (5th Cir. 1988).

Here, the opinions in the declaration did not raise any material questions of

fact that required the district court to convert the motion.  In fact, the only purpose

for which it was proffered—to make conclusory statements about the ultimate is-

sue before the court—coincides precisely with what the district court is empowered

---

[11] Affinity relies on two pre-*Alice* opinions that were *vacated* by the Supreme Court.  (Br. 46 (citing *CLS Bank Int'l v. Alice Corp. Pty. Ltd*, 717 F.3d 1269 (Fed. Cir. 2013); *Ultramercial Inc. v. Hulu, LLC*, 722 F.3d 1335 (Fed. Cir. 2013).)

to ignore. *See Soverain Software LLC v. Newegg Inc.*, 705 F.3d 1333, 1341 (Fed. Cir. 2013) (opinions on ultimate legal conclusion are not evidence); *Twombly*, 550 U.S. at 570 (courts do not need to consider conclusory and irrelevant allegations). For example, the declaration notes that Apple had not yet released the iPod or iPhone before the effective filing date of the patent, and that a particular MP3 player then on the market could not stream media and lacked a graphical user interface. (A551-52 at ¶¶ 7-9.)   But this testimony relates solely to the novelty and non-obviousness of the purported invention.   Whether claims comply with these requirements has no bearing on whether they claim patent eligible subject matter. *See Myriad*, 133 S. Ct. at 2117; *Diamond v. Diehr*, 450 U.S. 175, 188 (1981); *Flook*, 437 U.S. at 595 n.18.  Novelty does not imply patent eligibility.  *See Ultramercial*, 772 F.3d at 716.

Affinity's expert further opines that the idea of playing media on a portable device includes portable radios, televisions, and other devices, and that a portable electronic device is not a mental process.  (A552 at ¶¶ 10-11.)  These observations—which are less statements of "fact" than legal conclusions on the issues the district court was called to decide—are consistent with the district court's ruling. (*See* A26 (the idea includes portable radios and televisions).)   The declaration states that the Patent Office considered many prior art references before issuing the '085 patent.  (A552 at ¶ 12.)  But this merely repeats duplicative information ap-

parent from the face of the patent. *See Internet Patents,* 790 F.3d at 1345, 1348 (an advance over the prior art does not demonstrate eligibility). The declaration states that the purported invention was not routine, conventional, or well-known. (A552-53 ¶ 14.) But again, this is a bare legal conclusion, not evidence. *See Soverain*, 705 F.3d at 1341. Indeed, on appeal Affinity does not rely on a single statement in the declaration that does not state a legal conclusion.

The Court's decision in *Mortgage Grader* confirms that a district court need not consider declarations that do not add to or overcome facts already in the intrinsic record. 2016 U.S. App. LEXIS 1115, at *21-24. There, the district court granted summary judgment of invalidity under § 101 based on the patent claims and specification. *Id.* As here, the declaration testimony at issue described the state of the relevant prior art and "added little if anything to the . . . patent's specification." *Id.* at *22. And as here, the patentee's expert focused on the problem the patent claimed to solve, but did not discuss the actual claim limitations. *Id.* at *22-23. The Court found no error in the district court's disregard of this testimony.

Affinity finally contends that the district court violated Due Process by not considering the declaration. (Br. 60.) Affinity did not raise this argument below, is barred from making this argument on appeal, and, in all events, provides no support for it now. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29

(5th Cir. 1996) (en banc).  The district court afforded Affinity a meaningful opportunity to be heard.  *See Edwards v. Shinseki*, 582 F.3d 1351, 1355 (Fed. Cir. 2009). The problem is not that Affinity was somehow denied Due Process; it is that its arguments have been repeatedly rejected by this Court.

## CONCLUSION

For the foregoing reasons, the district court's judgment should be affirmed.

Dated:  February 22, 2016

Respectfully submitted,

*/s/ J. David Hadden*

Gregory Garre
Gabriel Bell
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004
202.637.2200

J. David Hadden
Saina S. Shamilov
Todd R. Gregorian
Ravi Ranganath
Adam Lewin
FENWICK & WEST LLP
801 California Street
Mountain View, CA  94041
650.988.8500

Jeffrey H. Dean
AMAZON.COM, INC.
440 Terry Ave. North
Seattle, WA 98109
206.740.0521

*Counsel for Defendants-Appellees
Amazon.com, Inc. and
Amazon Digital Services, Inc.*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(b). This brief contains 9,948 words, excluding parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(b)(iii).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief uses a proportionally spaced typeface using Microsoft Word and 14 point Times New Roman font.

Dated: February 22, 2016                     Respectfully submitted,

                                             */s/ J. David Hadden*

Gregory Garre                                  J. David Hadden
Gabriel Bell                                   Saina S. Shamilov
LATHAM & WATKINS LLP                           Todd R. Gregorian
555 Eleventh Street, NW                        Ravi Ranganath
Suite 1000                                     Adam Lewin
Washington, D.C. 20004                         FENWICK & WEST LLP
202.637.2200                                   801 California Street
                                               Mountain View, CA  94041
Jeffrey H. Dean                                650.988.8500
AMAZON.COM, INC.
440 Terry Ave. North
Seattle, WA 98109                            *Counsel for Defendants-Appellees*
206.740.0521                                 *Amazon.com, Inc. and*
                                             *Amazon Digital Services, Inc.*

## CERTIFICATE OF SERVICE

I, J. David Hadden, hereby certify that on February 22, 2016, I caused the

foregoing **BRIEF OF DEFENDANTS-APPELLEES AMAZON.COM, INC.**

**AND AMAZON DIGITAL SERVICES, INC.** to be served on the following par-

ties as indicated below:

| | |
|---|---|
| Ronald J. Schutz<br>Cyrus A. Morton<br>Patrick M. Arenz<br>Brenda L. Joly<br>Benjamen C. Linden<br>ROBINS KAPLAN LLP<br>800 LaSalle Avenue, Suite 2800<br>Minneapolis, MN 55402-2015<br><br><br>*Counsel for Plaintiff-Appellant*<br>*Affinity Labs of Texas, LLC* | [  ] By United States Mail<br>[  ] By Legal Messenger<br>**[X] By Electronic CM/ECF**<br>[  ] By Overnight Express Mail<br>[  ] By Facsimile<br>[  ] By Email [courtesy copy] |

Dated:  February 22, 2016

FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
dhadden@fenwick.com
Telephone:650-988-8500
Facsimile:650-938-5200

By:  */s/ J. David Hadden*
J. David Hadden

*Counsel for Defendants-Appellees*
*Amazon.com, Inc. and*
*Amazon Digital Services, Inc.*